# Ridgell *v.* The State.

### *Murder.*

(Decided June 18, 1908.   47 South. 75.)

1. *Jury; Venire; Quashing.*—Where it appeared that in making a copy of the venire to be served on the defendant, the copyist inserted the name of a juror opposite No. 38 wrongfully, and afterwards, but before service on the defendant crossed out such name and inserted the proper name, and the number and name on the venire corresponded with the number and name drawn from the hat, the court properly overruled the motion to quash on that ground.

2. *Trial; Order of Proof; Corpus Delicti; Threats.*—While it is irregular to permit evidence of threats before proof of the corpus delicti, such irregularity is cured by the subsesquent introduction of evidence showing the killing of deceased by defendant.

3. *Witnesses; Impeachment; Inconsistency; Statements.*—The witness not having testified to any threats by accused against deceased, the state cannot, for the purpose of laying predicate for impeachment, ask such witness whether or not, in the absence of the accused, and at a certain time and place, he had stated that accused had threat-

ened defendant; and upon a reply in the negative it was error to permit the state to prove that the witness had made such a statement. The proper method was to have asked the witness whether accused had threatened the deceased, and on an answer in the negative the state could have shown by others that the witness had stated that accused had threatened the deceased.

. 4. *Charge of Court; Ignoring Evidence.*—Where the evidence tended to show that the combat was mutually entered into between accused and deceased, a charge asserting that if deceased commenced the difficulty by using abusive language and by striking accused, who had merely answered the language, and if accused then assaulted the decedent, cutting him, and such cutting was or reasonably appeared to be necessary to protect accused from grievous bodily harm, and there was open to defendant no reasonable mode of escape without increasing his danger, or apparent danger, then the defendant must be acquitted is properly refused for pretermitting a willingness on the part of defendant in entering into the fight.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Tom Ridgell was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded.

The defendant was indicted for killing one John McGehee by cutting him with a knife. The facts on which the opinion is rested sufficiently appear therein. The following charges were refused to the defendant: "(14) If the jury believe from 'all the facts of the case that the conduct of the deceased was such towards the defendant at the time of the killing as to create in the mind of defendant a just apprehension of apparent imminent danger to his limb or life, he could lawfully act upon such appearances and kill his assailant, provided defendant was free from fault in bringing on the difficulty. (14½) If the deceased, McGehee, commenced the difficulty by using towards the defendant insulting or abusive language, and if the defendant merely answered the insult and did nothing more, and if thereupon deceased immediately struck defendant with a bottle, and used or attempted to use his knife on defendant, and if thereupon defendant cut the deceased, and such cutting was, or reasonably appeared to be, necessary to protect

defendant from grievous bodily harm, and if there was open to defendant no reasonable mode of escape without increasing his danger, or apparent danger, then you will find defendant not guilty."

W. O. MULKEY, and JOHN R. COOPER, for appellant. The court erred in permitting the state to impeach Hartley in the way attempted.—*Gooley v. The State,* 87 Ala. 57; *Williams v. The State,* 130 Ala. 107; 1 Green. on Evi. sec. 462. Charge 14½ should have been given.— *Howell v. The State,* 79 Ala. 283.

ALEXANDER M. GARBER, Attorney-General, for the State. The court did not err in refusing to quash the venire.—*Roberts v. The State,* 69 Ala. 156. The threat was rendered admissible by the subsequent introduction of proof of the corpus delicti. At most it was an irregularity.—*LaFayette County v. Tucker,* 124 Ala. 514. The court did not err in reference to Hartley's testimony. It was a quasi confession and tended to show his animus.—*Plant v. The State,* 140 Ala. 51; *Bush v. The State,* 136 Ala. 85. The court did not err in the refusal of the charges.—*Mitchell v. The State,* 133 Ala. 65; *Harrison v. The State,* 144 Ala. 20; *Reese v. The State,* 135 Ala. 13; *Franklin v. The State,* 44 South. 979.

DOWDELL, J.—We think, from the record here, that it was sufficiently shown on the trial, in the selection of the jury, that the name of the juror in the typewritten copy served on the defendant, and numbered 38, was S. H. Tew, corresponding with that number and name on the slip drawn from the hat, and the court committed no error in overruling the motion to quash the venire. It plainly appears in the record before us that the copyist, in making a list of the jurors, had in the first in-

stance written the wrong name, and then corrected the mistake by crossing out this wrong name and inserting the right name—S. H. Tew.

The court permitted the state to show threats by the defendant against the deceased before proof of the corpus delicti. This was irregular, but the subsequent introduction of evidence of the killing of the deceased by the defendant cured the error, if it could be termed such.

One Hartley was introduced and examined as a witness on behalf of the defendant. On his cross-examination by the state the solicitor asked the witness the following question: "Did you not, at the time when the preliminary trial in this case was to be had, in the town of Geneva, in the presence of J. D. Jenkins and others, state on the night of the cutting, just after separating deceased and defendant, that you had McGehee with you, and that just after McGehee was cut, and before McGehee got to the house, that defendant Ridgell ran up to you and McGehee, and said, 'Damn him, if he ain't dead, let me kill him?'" This question was objected to on the ground, among others, that "the testimony sought was illegal." The court overruled the objection and required the witness to answer, to which ruling the defendant excepted. The witness answered that he did not make the statement. After the defendant had closed his evidence in the case, and rested, the state, in rebuttal, introduced J. D. Jenkins as a witness, and against the objections of the defendant the court permitted the solicitor to prove by this witness that the witness Hartley made the statement as laid in the question on his cross-examination.

The witness Hartley did not testify, either on his direct or cross-examination, that the defendant did or did not do and say the thing mentioned in the question of the solicitor to this witness that was objected to, viz.,

that the defendant ran up to witness, and the deceased, and said, "Damn him, if he ain't dead, let me kill him," nor was the witness Hartley asked, either on his direct or cross-examination, whether the defendant did or said any such thing. The witness not having testified as to any such conduct or threat by the defendant, the question to the witness as a predicate for impeachment was improper. It could not serve to show a statement made by the witness out of court contradictory of any statement testified to by him. As primary evidence it was illegal, for any such statement made by the witness, not in the presence of the defendant, was as to the defendant hearsay. So the effect of permitting Jenkins to testify that Hartley made such statement was to put before the jury purely hearsay evidence calculated to prejudice the defendant's cause. It is only upon the theory of impeachment that such statements made by a witness can be shown in evidence. If Hartley had been asked if the defendant did and said what was stated in the question put to him, and had answered in the negative, then the question asked by the solicitor as to the statement made by Hartley in the presence of Jenkins would have been proper in the laying of a predicate for impeachment, and if Hartley had denied making the statement, then the evidence of Jenkins contradicting him would have been legal and proper for the purpose of impeaching the witness, and only for this purpose. We think the trial court erred in its rulings in this respect, and that it was prejudicial to the rights of the defendant.

Several charges were refused to the defendant. The only one insisted on as error is that numbered 14½. This charge pretermitted the question of entering willingly into the fight, and there was evidence tending to show that the combat was mutual. For the reason stat-

ed, if for no other, the charge was properly refused. The other refused charges we have examined, and find that the court committed no error in their refusal.

For the error indicated above in the ruling of the court on the evidence, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.